**Electronically Filed
Intermediate Court of Appeals
29255
27-JUN-2012
08:37 AM**

NO. 29255

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


JEROME JANTO, Plaintiff-Appellant,
v.
ROMAN CATHOLIC CHURCH IN THE STATE
OF HAWAI'I, Defendant-Appellee,
AND
JOHN DOES 1-10, JANE DOES 1-10, DOE CORPORATIONS 1-10,
DOE PARTNERSHIPS 1-10, DOE JOINT VENTURES 1-10,
DOE GOVERNMENTAL ENTITIES 1-10, INCLUSIVE, Defendants


APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CIVIL NO. 04-1-0398)

MEMORANDUM OPINION
(By: Foley, Presiding Judge, Fujise and Reifurth, JJ.)

Plaintiff-Appellant Jerome Janto ("Janto") appeals from a September 4, 2008 Final Judgment of the Circuit Court of the Third Circuit ("Circuit Court")[1] in favor of Defendant-Appellee Roman Catholic Church in the State of Hawai'i ("Hawai'i RCC"). Janto sued Hawai'i RCC for employment discrimination under Hawaii Revised Statutes ("HRS") § 378-2 and the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"), claiming that Hawai'i RCC terminated his employment because of his disability. After a bench trial, the Circuit Court issued its June 12, 2008 findings of fact and conclusions of law, concluding that Janto failed to show that he was qualified to perform the essential functions of his job, with or without accommodation, due to his excessive absenteeism. We affirm.

_____

[1] The Honorable Greg K. Nakamura presided.

I.    BACKGROUND

A.    Findings of Fact

The Circuit Court made the following relevant findings of fact. Hawai'i RCC operates the Office of Social Ministry ("OSM"). OSM ran the Care-A-Van program, which was funded by the State of Hawai'i, Adult Mental Health Division ("AMHD"). The purpose of the Care-A-Van program was "to provide the targeted homeless population with necessary mental health and other services in order to move them towards transitional or permanent housing and eventual integration into the community." The contract funding the Care-A-Van program required OSM to recruit a certain minimum number of clients for each contract year. OSM made its employees aware of their minimum contract obligations.

In July 1999, Janto began working for OSM as an outreach worker in the Care-A-Van program. At all relevant times, Janto, an amputee, used a prosthetic left leg. His position required him to drive around the eastern half of Hawai'i County and speak with members of the homeless population, enroll them as clients, help match them with social services according to their needs, and follow up as appropriate. When Janto was working, his physical condition did not affect his ability to perform his duties.

OSM employees were entitled to ten sick days per year.[2] Janto, however, consistently exceeded his entitlement by substantial margins. Janto took 26 days of sick and temporary-disability leave in 2001, 47 days in 2002, and 68.5 days in 2003.[3] When Janto was not at work, he was unable to enroll new clients. Due to OSM's limited resources and the unpredictability of Janto's absences, OSM frequently reassigned employees working under other contracts to perform Janto's responsibilities in

_____

[2]    Janto challenges this finding of fact, contending that the record demonstrates that he, like other employees, was entitled to fifteen days of sick leave per year. Hawai'i RCC concedes that the finding was erroneous, but contends that the error was harmless. *See infra* section IV.B.2.b.

[3]    Janto argues that, although his absences in 2003 were significant, the vast majority of those absences were caused by a surgery related to a neuroma on his left leg and that his attendance improved in the second half of 2003.

2

order to fulfill the minimum contract obligations.

In July 2003,[4] OSM started a new program called One-Stop, a drop-in center in Hilo that provided services similar to Care-A-Van. That same month, as Janto returned to work following an extended leave of absence, OSM assigned Janto to help start up One-Stop due to his experience working with the mentally ill homeless population and prior work experience at a drop-in center. Following this assignment, however, OSM's Executive Director ("Director") and Janto's supervisor ("Supervisor") observed that Janto exhibited a persistent negative attitude toward the One-Stop program which adversely impacted other employees at OSM.

Before the end of January 2004, Janto had already taken 8.5 days of sick leave. By letter dated January 30, 2004 ("Termination Letter"), the Director terminated Janto's employment with OSM, effective on January 31, 2004.[5]

B. Conclusions of Law

The Circuit Court made the following conclusions of law. Janto's loss of a portion of his leg constituted a physical impairment that substantially limited his ability to move using his legs, a major life activity. While Janto performed adequately on the job, his position at OSM required regular attendance at work because his work could not be accomplished from home. Hawai'i RCC could not make reasonable accommodations for Janto's absences because (1) his absences vastly exceeded his allotted sick days in 2001, 2002, and 2003; (2) the timing and

---

[4]  The Circuit Court's findings of fact incorrectly state that the One-Stop program was initiated in "mid-July 2004." The finding was not raised as an issue on appeal, which we treat as a typographical error with no independent consequence.

[5]  The Termination Letter offers Janto's attendance as the sole basis for his termination. At trial, the Director explained that although Janto's attendance was the "primary reason" that she decided to fire Janto, other factors that she considered included the fact that he had "consistently become much more hostile almost about being there" and referenced "his situation with two of his co-workers that had festered". The Director explained that she was concerned that Janto's "numbers" had fallen, and that as a result of the falling numbers, she feared that OSM's contract with AMHD might be in jeopardy. It appears that the "numbers" refer to some measure of Janto's production. The Director appeared also to attribute Janto's falling numbers to his absences.

duration of his absences were unpredictable; and (3) his position had minimum requirements which would not have been met but for the assistance of his coworkers. Consequently, Hawai'i RCC "was justified in its position that [Janto] was not qualified to perform his job functions because of his absenteeism, notwithstanding the fact that the absenteeism was due to a disability."

The Circuit Court held that Janto failed to establish a prima facie case of employment discrimination. The Circuit Court noted that even if Janto had been able to establish a prima facie case, Hawai'i RCC had a legitimate, non-discriminatory justification for terminating Janto's employment, and Janto failed to show that his negative attitude and actions were not motivating factors in his termination.

II. POINTS OF ERROR

Janto claims that the Circuit Court's conclusion that his position required regular attendance was not supported by substantial evidence. In the alternative, Janto argues that even if his position required regular attendance, there was insufficient evidence showing that he was unqualified to perform the essential functions of his position because (1) his attendance had improved prior to his termination, (2) the Circuit Court improperly considered agreed-upon medical leave when calculating his absences, and (3) the Circuit Court's finding that he was only entitled to ten sick days per year was not supported by the record. Janto also asserts that the Circuit Court erred in concluding that reasonable accommodations would not have enabled him to perform the essential functions of his position.

Finally, Janto claims that the Circuit Court erred when it held that, as a matter of law, the burden would be on Janto to show his attitude and challenges[6] were not motivating factors in Hawai'i RCC terminating him.

---

[6] The Circuit Court, in fact, held that "the burden would be on Plaintiff to show that his attitude and *negative actions* were not motivating factors in [Hawai'i RCC] terminating him." (Emphasis added.)

III. STANDARDS OF REVIEW

    A.    Findings of Fact and Conclusions of Law

        "In this jurisdiction, a trial court's FOFs are subject to the clearly erroneous standard of review. An FOF is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction that a mistake has been committed." *Chun v. Bd. of Trs. of the Employees' Ret. Sys. of the State of Haw.*, 106 Hawai'i 416, 430, 106 P.3d 339, 353 (2005) (internal quotation marks, citations, and ellipses omitted) (quoting *Allstate Ins. Co. v. Ponce*, 105 Hawai'i 445, 453, 99 P.3d 96, 104 (2004)). "An FOF is also clearly erroneous when the record lacks substantial evidence to support the finding. [The Hawai'i Supreme Court has] defined "substantial evidence" as credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion." *Leslie v. Estate of Tavares*, 91 Hawai'i 394, 399, 984 P.2d 1220, 1225 (1999) (internal quotation marks and citations omitted) (quoting *State v. Kotis*, 91 Hawai'i 319, 328, 984 P.2d 78, 87 (1999)).

> A COL is not binding upon an appellate court and is freely reviewable for its correctness. [The appellate court] ordinarily reviews COLs under the right/wrong standard. Thus, a COL that is supported by the trial court's FOFs and that reflects an application of the correct rule of law will not be overturned. However, a COL that presents mixed questions of fact and law is reviewed under the clearly erroneous standard because the court's conclusions are dependent upon the facts and circumstances of each individual case.

*Chun*, 106 Hawai'i at 430, 106 P.3d at 353 (internal quotation marks, citations, and brackets in original omitted) (quoting *Ponce*, 105 Hawai'i at 453, 99 P.3d at 104).

    B.    Harmless Error

        In civil cases, "[n]o judgment, order, or decree shall be reversed, amended, or modified for any error or defect, unless the court is of the opinion that it has injuriously affected the substantial rights of the appellant." HAW. REV. STAT. § 641-2 (Supp. 2011).

5

IV.  DISCUSSION

To establish a prima facie case in disability-discrimination cases, the plaintiff must establish that "(1) he or she is an individual with a 'disability' within the meaning of the statute; (2) he or she is otherwise qualified to perform the essential duties of his or her job with or without reasonable accommodation; and (3) he or she suffered an adverse employment decision because of his or her disability."  *French v. Haw. Pizza Hut, Inc.*, 105 Hawai'i 462, 467, 99 P.3d 1046, 1051 (2004) (citing *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 477-78, 481 (1999)).

A.  Janto was disabled.

Pursuant to HRS § 378-2 (Supp. 2011), employers are prohibited from "refus[ing] to hire or employ or to bar or discharge from employment" any individual because of a disability.  An individual has a "disability" for the purposes of § 378-2 if he or she has "a physical or mental impairment which substantially limits one or more major life activities, having a record of such an impairment, or being regarded as having such an impairment."  HAW. REV. STAT. § 378-1 (1993).  The ADA's language is substantially the same.  *French*, 105 Hawai'i at 467, 99 P.3d at 1051.

The parties do not contest the test's first element and appear to agree that Janto has a disability within the definition of the statute.  The Circuit Court held that "at the time of his termination, Plaintiff was disabled."  Neither party challenged the court's conclusion and this is not an issue on appeal.

B.  The Circuit Court's conclusion that Janto failed to assert a prima facie case of employment discrimination was not erroneous.

1.  The Circuit Court did not err when it concluded that regular attendance was an essential function of Janto's position.

Janto argues that there was insufficient evidence justifying the Circuit Court's conclusion that regular attendance was an essential duty of his position.  The argument is without

merit. As a general matter, "regular and reliable attendance is a necessary element of most jobs." *See Nesser v. Trans World Airlines, Inc.*, 160 F.3d 442, 445 (8th Cir. 1998). Janto's position at OSM was no exception.

OSM's contract with AMHD required OSM to provide outreach and interim case management for a minimum number of clients. Supervisor testified that Janto could not work at home because his position was "an outreach position," requiring him "to engage with people to go out and literally find or connect with mentally ill individuals and get them hooked up to services and register with the department." When Janto was not at work, OSM did not have the resources to hire somebody else to temporarily work in his place. Coworkers whose positions were funded by separate contracts were required to perform Janto's duties when he was absent.

Since the Circuit Court's conclusion that regular attendance was an essential function of Janto's position represents a mixed question of fact and law, it is reviewed under the clearly erroneous standard. *Chun*, 106 Hawai'i at 430, 106 P.3d at 353. The Circuit Court's conclusion was supported by substantial evidence and we have no definite and firm conviction that a mistake has been made; therefore, Janto has not shown error.

> 2. The Circuit Court's conclusion that Janto's absenteeism rendered him unqualified to perform the essential functions of his position was not clearly erroneous.

The Circuit Court concluded that Janto's absenteeism prevented him from performing the essential functions of his job. Janto argues that the evidence presented at trial did not support this conclusion. "The question of whether an employee can perform the essential functions of her job is a mixed question of law and fact." *See Mason v. Avaya Commc'ns, Inc.*, 357 F.3d 1114, 1122 (10th Cir. 2004). Our review on this point, therefore, is subject to the clearly erroneous standard. *Chun*, 106 Hawai'i at 430, 106 P.3d at 353.

The evidence presented at trial more than adequately supports the Circuit Court's conclusion. Hawaiʻi RCC showed that Janto's absences from work in 2001 through 2003 were substantial, far exceeding his allocated sick days. Within the first two weeks of January 2004, Janto had already taken 8.5 sick days, over half of his annual allotment. His frequent absences required employees working on other contracts to do his job in addition to their own. Furthermore, the absences were for unpredictable durations. *See Jackson v. Veterans Admin.*, 22 F.3d 277, 279 (11th Cir. 1994) (unpredictability is "the heart of the problem" of absenteeism). As a result, OSM was forced to consistently "scramble" to find coverage. While Janto contends that his condition and attendance had improved in the second half of 2003, there is a lack of evidence showing that Janto was capable of regularly attending work moving forward. The Circuit Court did not err in concluding that Janto was unqualified to perform the essential functions of his job.

> a. Janto failed to state where in the record he put the Circuit Court on notice of his position that agreed-upon medical leave should not be considered when calculating Janto's total absences.

Janto argues that the Circuit Court erroneously considered agreed-upon medical leave in its calculation of Janto's total absences. However, Janto's point of error does not state where in the record he put the Circuit Court on notice of his legal position that agreed-upon absences should not be considered when calculating total absences.

Pursuant to Hawaiʻi Rules of Appellate Procedure ("HRAP") Rule 28(b)(4), each point of error shall state "where in the record the alleged error was objected to or the manner in which the alleged error was brought to the attention of the court or agency." "As a general rule, if a party does not raise an argument at the circuit court level, that argument will be deemed to have been waived on appeal[.]" *Haw. Ventures, LLC v. Otaka, Inc.*, 114 Hawaiʻi 438, 500, 164 P.3d 696, 758 (2007) (brackets omitted) (quoting *Kemp v. State of Haw. Child Support Enforcement*

*Agency*, 111 Hawai'i 367, 391, 141 P. 3d 1014, 1038 (2006)); *see also* Haw. R. App. P. 28(b)(4) ("Points not presented in accordance with this section will be disregarded . . . ."). Therefore, we will not consider this argument on appeal.[1]

> b. The Circuit Court's erroneous finding that Janto was entitled to ten days of sick leave per year instead of fifteen days was harmless error.

The Circuit Court found that OSM employees were only entitled to ten sick days per year. This finding was clearly erroneous, as the evidence shows that OSM employees were entitled to fifteen sick days per calendar year.

In civil matters, error committed by the trial court is not grounds for reversal "unless the court is of the opinion that it has injuriously affected the substantial rights of the appellant." HAW. REV. STAT. § 641-2. The Circuit Court's error was merely a matter of degree. Janto still exceeded his allotted fifteen days of sick leave by substantial and widening margins in 2001, 2002, and 2003, and had used over half of his 2004 sick leave in the first two weeks of January alone. We are not of the opinion that the Circuit Court's ruling would have changed at all absent the error; thus, the Circuit Court's error was harmless as a matter of law.

---

[1] Even if we were to consider the argument, however, Janto fails to establish that the Circuit Court should not have considered agreed-upon medical leave when deciding that an employee is not otherwise qualified to perform his or her job due to chronic absenteeism. The lone case Janto cites in support of his position, *Powers v. Polygram Holding, Inc.*, 40 F. Supp. 2d 195 (S.D.N.Y. 1999), is inapposite — *Powers* merely stands for the proposition that a court "cannot rule, as a matter of law, that [a] plaintiff's request for a seventeen-week leave of absence renders him legally unqualified to work." 40 F. Supp. 2d at 199.

Janto also relies on an Equal Employment Opportunity Commission ("EEOC") enforcement guidance, which states that an employer may not "penalize an employee for work missed during leave taken as a reasonable accommodation[.]" EEOC, Notice No. 915.002, Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act, at ¶ 19 (Oct. 17, 2002), http://www.eeoc.gov/policy/docs/accommodation.html. The examples elucidating this guideline, however, pertain to employers who impose arbitrary standards for termination that, by their nature, penalize employees who took extended leaves of absence. *See id.* (an employer who, for example, fires employees whose sales fall 25% below the median sales performance of all employees or who lays off any worker who misses more than four weeks of work). The guideline does not pertain to an employee whose chronic absenteeism renders him unqualified to perform his job. Janto's argument is without merit.

3.   Reasonable accommodations.

Janto argues that the Circuit Court's conclusion that he was not qualified to perform the essential functions of his position, even with reasonable accommodation, was erroneous. Pursuant to Hawaiʻi Administrative Rules ("HAR") § 12-46-187(a) (1994), "[i]t is unlawful for an employer . . . not to make reasonable accommodation to the known physical or mental limitations of an otherwise qualified applicant or employee with a disability, unless such employer or entity can demonstrate that the accommodation would impose an undue hardship on the operation of its business." *See also* 42 U.S.C. § 12112(b)(5)(A) (2009) (discrimination includes "not making reasonable accommodations" unless the employer can demonstrate undue hardship). An employer is required "to initiate an interactive process, after a request for an accommodation . . . [that] shall identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." Haw. Admin. R. § 12-46-187(b) (1994); 29 C.F.R. § 1630.2(o)(3) (2012) ("To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of accommodation.").

However, "[t]o be entitled to reasonable accommodation under HAR § 12-46-187, a person must be a 'qualified applicant or employee with a disability.'" *Suzuki v. State*, 119 Hawaiʻi 288, 300, 196 P.3d 290, 302 (App. 2008). A "qualified person with a disability" must be able to perform essential functions of the job "with or without reasonable accommodation." Haw. Admin. R. § 12-46-182 (1994); *see also* 42 U.S.C. § 12111(8) (2009). Therefore, an employer is not required to provide reasonable accommodation unless a reasonable accommodation exists that would effectively enable the employee to perform the job's essential functions.[8] *See Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128,

---

[8]   Janto's argument about reasonable accommodation is generally based on the fact that Hawaiʻi RCC never spoke to him about reasonable accommodation. To be entitled to an interactive process pursuant to HAR § 12-46-187(b), the employee must "let the employer know that some adjustment or

(continued...)

1137-38 (9th Cir. 2001); *Willis v. Conopco, Inc.*, 108 F.3d 282, 285 (11th Cir. 1997) ("The ADA . . . is not intended to punish employers for behaving callously if, in fact, no accommodation for the employee's disability could reasonably have been made.").

It is inherently difficult to accommodate an employee who is chronically and unpredictably absent from work when regular attendance is an essential function of his or her position. *See Maziarka v. Mills Fleet Farm, Inc.*, 245 F.3d 675, 682 (8th Cir. 2001). In *Maziarka*, plaintiff suffered from a permanent, debilitating condition which flared up unpredictably, causing him to miss work as a receiving clerk in a hardware store approximately two days per month. 245 F.3d at 677-78. The plaintiff was fired from his job for excessive absenteeism, and he brought suit against his former employer under the ADA. *Id.* at 678. The Eighth Circuit Court of Appeals affirmed the District Court's grant of summary judgment in favor of the employer, stating that "the crucial problem—the unpredictability of [the plaintiff's] absences— . . . left [the employer] unable to rely on its schedule in order to efficiently receive and process merchandise." *Id.* at 682. The Court stated that "[i]t is well settled that an employer is under no obligation to reallocate the essential functions of a position that a qualified individual must perform[,]" and that the employer was "not obligated to hire additional employees or reassign existing workers in order to compensate for [the plaintiff's] unexpected absences." *Id.* (quoting *Moritz v. Frontier Airlines, Inc.*, 147 F.3d 784, 788 (8th Cir. 1998)); *see also Jackson v. Veterans Admin.*, 22 F.3d 277, 279 (11th Cir. 1994) (stating that the plaintiffs' proposed accommodations "do not address the heart of the problem: the unpredictable nature of [plaintiff's] absences. There is no way to accommodate this aspect of his absences. Requiring the VA to accommodate such absences would place upon the agency the burden of making last-minute provisions for [plaintiff's] work to be done by someone else.").

---

8/ (...continued)
change is needed to do a job because of limitations caused by a disability." Haw. Admin. R. § 12-46-187(a). Janto's requests for leaves of absence satisfy this requirement.

The Circuit Court concluded that Janto was not qualified to perform his job because of absenteeism and that no reasonable accommodation could be made for him because:[9]

    a)    the number of [Janto's] absences per year significantly exceeded the number of sick leave days available per year for the years 2001, 2002, and 2003;

    b)    [Janto's] absences were such that when they occurred and how long their duration would be were unpredictable; *see Powers v. Ploygram Holding, Inc.*, 40 [F.Supp.2d] 195, 200 (S.D.N.Y. 1999); and

    c)    [Janto] was employed to perform work under a specific contract which required a certain level of performance and when he was absent, other employees engaged to perform services under other contracts were required to cover for [Janto]. *Id.* [a]t 201.

Based on the record, the Circuit Court did not err in concluding that Janto was not qualified to perform his job with or without accommodation. Therefore, Janto failed to state a prima facie case of employment discrimination.

    C.    Janto did not suffer an adverse employment decision because of his disability.

    1.    Attendance

For the reasons expressed above, the Circuit Court's conclusion that regular attendance was necessary before Janto would be a "qualified" individual under the law leads inexorably to the conclusion that Janto did not suffer an adverse employment decision because of his disability.

    2.    Mixed-motive analytical framework

Alternatively, Janto argues that he suffered an adverse employment decision because of his disability when analyzed under a mixed-motive analytical framework. Specifically, Janto

---

[9]    A warning, in and of itself, is not a "reasonable accommodation." A reasonable accommodation is something in the nature of a modification of a workplace condition or the employee's responsibilities or work schedule, with the purpose of ameliorating the negative effects of the employee's disability. *See* Haw. Admin. R. § 12-46-182; 29 C.F.R. § 1630.2(o). A warning that an employee's job is in jeopardy is not a "reasonable accommodation" within the meaning of the Hawai'i Administrative Rules or the ADA. Furthermore, Janto was aware of the nature of his job, the AMHD contract requirements, and, according to a February 2003 performance evaluation, was notified that he needed to "focus to improve job performance" in the areas of "[a]ttendance and dependability."

challenges the Circuit Court's conclusion that Janto must show that his attitude and negative actions were not motivating factors in Hawai'i RCC's decision to terminate him. The Circuit Court's conclusion, however, was unrelated to the mixed-motive analytical framework.[10]

Initially, we note that the literal correctness of the Circuit Court's conclusion of law, as it relates to the *McDonnell Douglas* analysis, is a moot issue because Janto failed to establish a prima facie case of discrimination. *See Shoppe*, 94 Hawai'i at 378-79, 14 P.3d at 1059-60 (under *McDonnell Douglas*, plaintiff must establish prima facie case before burden of production shifts).

The Circuit Court did not address whether Janto proved disparate treatment under a mixed-motive theory, concluding first, as discussed above, that even if Janto had met his burden of proving a prima facie case of discrimination, Hawai'i RCC had offered a legitimate, non-discriminatory justification for his termination.[11] As the Hawai'i Supreme Court stated in *Shoppe*, the mixed-motive and *McDonnell Douglas* analyses are different methods for proving disparate treatment. *Id*. at 378, 14 P.3d at 1059. To establish mixed-motive disparate treatment, a plaintiff "must show by direct evidence that discriminatory factors motivated the adverse employment decision." *Id*. If the

---

[10] Although the Circuit Court's conclusion of law at issue was made in relation to the analysis in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) ("McDonnell Douglas analysis"), Janto's argument appears to be that the Circuit Court failed to properly apply a mixed-motive analysis, under which he would only have to show that discriminatory factors motivated his termination. *See Shoppe v. Gucci Am., Inc.*, 94 Hawai'i 368, 378, 14 P.3d 1049, 1059 (2000). Since the Circuit Court did not conduct a mixed-motive analysis, we review to determine whether that failure itself was error.

[11] Janto's point of error does not state where in the record he asserted a mixed-motive position before the Circuit Court. This failure could constitute waiver of the point of error pursuant to Haw. R. App. P. 28(b)(4). *See Carson v. Patterson Cos.*, 423 F.App'x 510, 513 (6th Cir. 2011) (failure to raise a mixed-motive theory before the trial court results in forfeiture of the argument on appeal); *Anderson v. Durham D & M, L.L.C.*, 606 F.3d 513, 521 n.6 (8th Cir. 2010) (mixed-motive theory not properly before the court when plaintiff failed to raise it below). Our independent review of the record, however, reveals that Janto raised the issue before the Circuit Court in its trial brief. Due to our policy to allow appellants "to have their cases heard on the merits, where possible," *O'Connor v. Diocese of Honolulu*, 77 Hawai'i 383, 386, 885 P.2d 361, 364 (1994), and the fact that the issue was actually raised below, we address the issue. Counsel is warned, however, that future non-compliance with HRAP Rule 28(b) may result in sanctions.

13

plaintiff makes this showing, "the burden shifts to the employer to prove that it would have taken the same adverse employment action against plaintiff absent the discrimination." *Id.*

While the Circuit Court should have specifically addressed Janto's mixed-motive argument,[12] its failure to do so was harmless. *See* HAW. REV. STAT. § 641-2 ("No judgment, order, or decree shall be reversed, amended, or modified for any error or defect, unless the court is of the opinion that it has injuriously affected the substantial rights of the appellant."). Janto claims that the "direct evidence" of discrimination is Hawai'i RCC's admission that "absenteeism was at least one reason for termination." Rather than viewing it as evidence of discrimination, the Circuit Court reasonably concluded that Janto's absenteeism rendered him unqualified to perform his job with or without reasonable accommodation because regular attendance was an essential function of his job.

Because "[a]n employer is not required to exempt an employee from performing the essential functions of his or her job or to reallocate essential functions to other employees," *see* *Suzuki*, 119 Hawai'i at 298, 196 P.3d at 300, Janto has not shown that discriminatory factors motivated Hawai'i RCC's decision to terminate him or that Hawai'i RCC would not have otherwise terminated his employment. Janto was fired because he was unqualified for his position, not because he was disabled. Thus, the Circuit Court's failure to address Janto's mixed-motive argument was harmless.

---

[12]    The U.S. Supreme Court's decision in *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009) has called into question whether a plaintiff can assert a mixed-motive posture in ADA cases. *See Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957, 962 (7th Cir. 2010); *Warshaw v. Concentra Health Servs.*, 719 F. Supp. 2d 484, 503 (E.D. Pa. 2010) (ADA retaliation claims). Our discussion here does not assume or decide that a mixed-motive analysis applies in the instant case.

V.   CONCLUSION

The September 4, 2008 Final Judgment is affirmed.

DATED:   Honolulu, Hawai'i, June 27, 2012.

On the briefs:

Phyllis Ahmadia
for Plaintiff-Appellant.

Janice T. Futa
for Defendant-Appellee.

Presiding Judge

Associate Judge

Associate Judge